## Bean's Administrator v. Bean.

(Decided October 15, 1926.)

### Appeal from Nelson Circuit Court.

1. Executors and Administrators.—Testimony that witnesses had heard decedent say that he intended that nephew should have all he had for services he had rendered held insufficient of itself to establish contract to pay for such services by provision in will.

2. Executors and Administrators.—Evidence held sufficient to take to jury question whether decedent contracted to pay nephew by provision in will for services, and to sustain verdict for nephew.

3. Executors and Administrator.—$2,500.00 held not excessive compensation for more than five years' service by nephew in caring for hypochondriac and helping in care and management of his farm, especially where he left nephew $500.00 in will for services in another year.

4. Trial.—Refusal of offered instruction expressing, in different fashion, what court had submitted in instruction given, held not error.

5. Evidence.—In suit to recover on decedent's agreement to pay for services by provision in will, declaration of decedent to third per-

sons, in absence of plaintiff, that he intended to leave property to
all relatives, share alike, held inadmissible.

OSSO W. STANLEY for appellant.

ERNEST N. FULTON and W. H. FULTON for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The appellee, Ardel Bean, was the nephew of J. F.
Bean, who died in February, 1922, the appellant being
thereafter appointed administrator of his estate. After
the death of J. F. Bean, Ardel Bean presented the claim
asserted in this litigation, properly verified, to appellant,
and on the appellant's declining to pay the same, he
brought this suit to recover thereon. He claimed that on
the first day of May, 1916, his uncle entered into a con-
tract with him, the terms of which were these: He was to
perform for his uncle such labor, services, nursing, care
and attention thereafter as his uncle might from time to
time require of him, in consideration of which his uncle
promised and agreed to pay him therefor by a provision
in his will. The appellee further alleged that he did
from the date of this agreement until his uncle's death in
February, 1922, render the services called for by this
contract, but that his uncle had failed to make the provis-
ion in his will which he had agreed to do. He claimed that
the reasonable value of his services for the period of time
involved was $50.00 a month, or the total sum of $3,450.-
00, for which he sought judgment. The answer traversed
appellee's claim and pleaded that whatever services ap-
pellee rendered his uncle were rendered gratuitously and
by reason of the relationship existing between them.
The affirmative matter in this answer was controverted
of record and on the issues thus formed the case went to
trial. The jury found a verdict in favor of appellee in
the sum of $2,500.00, and from the judgment entered on
that verdict appellant prosecutes this appeal.

He first insists that he was entitled to a peremptory
instruction in this case on the ground that appellee had
failed to establish the contract sued on. Much of the evi-
dence of the appellee, it is true, is of the character which
we held in the case of Lucius' Admr. v. Owens, 198 Ky.
114, 248 S. W. 495, insufficient of itself to establish an
express contract such as is here asserted. This evidence
was to the general effect that the witnesses had heard the
decedent say that at his death he intended that his

nephew should have all that he had for the work that his nephew had done for him, and for the services his nephew had rendered him. But appellee's case does not rest entirely on this character of testimony. The deposition of his brother, which was read on the trial, establishes the fact that his brother had heard his uncle state that the latter had an agreement with the appellee to pay him well by a provision in his will for all that appellee did for him, and that his brother had heard his uncle make this statement in the presence of the appellee many times. This witness was asked specifically whether or not the uncle had said anything about agreeing to make a provision in his will for appellee's services, and he answered that his uncle had said that he had an agreement with appellee about it. This evidence was sufficient to carry appellee's case to the jury, and supported as it is by the other evidence, to which we have referred, but which alone would have been insufficient for that purpose, it sustains the verdict. The appellant, then, was not entitled to a peremptory instruction.

It is next urged that the verdict is grossly excessive. It is true that the verdict is large, but we cannot say that it is excessive. The evidence shows that appellee was subject to call by his uncle at all times; that, although his uncle was not in fact a sick man, he was a hypochondriac, and oftentimes this kind of a person is as hard to wait upon as one who is really sick; that his nephew, who lived from 1916 to 1920 some three miles away from his uncle, went at all times of the day and night on telephone call from his uncle to take care of him and to do such things as his uncle wished; that he helped his uncle in the care and management of his uncle's farm up to the year 1920, although it is true that he also worked during this period on his mother's farm, and also raised a crop of tobacco on a farm adjoining that belonging to his uncle; that he built a barn for his uncle; that he took his uncle about the neighborhood; that he attended to his uncle's stock and assisted him in every way his uncle wished. After 1920, that being the year of the death of his uncle's wife, he did not have to help his uncle in the management of any farm, as his uncle broke up housekeeping and came to live with appellee's mother, but even during the last year or so of his uncle's life he took him around the country, the uncle being very fond of visiting, and took good care of him. It is quite evident from this record that his uncle wished to compensate appellee liberally for what the

latter did because in one provision of his will not in controversy here, he left appellee $500.00 for services performed for him by appellee during the year 1911. This was at a time when this appellee was quite young, and the sum given for such services evidences a purpose on the part of the uncle to pay the appellee liberally for what the appellee did for him. We, therefore, think there is no merit in the contention of appellant that the verdict is excessive.

It is next urged that the court erred in refusing to give an instruction offered by the appellant. He admits fairly and frankly in his brief that the instruction given by the court was correct. This instruction in substance told the jury that they could not find for appellee unless they believed from the evidence that the appellee had established the contract he claimed to have had with his uncle. The instruction offered by appellant, in substance, was that the jury could not find for appellee if they believed that the services rendered the uncle by appellee were performed without any express agreement, gratuitously and because of the relationship existing between them. This offered instruction only expressed in a different fashion what the court submitted to the jury in the instruction which appellant admits was correct. We do not think there was any error in failing to give the offered instruction.

Lastly, it is contended that competent evidence offered by appellant was rejected. This evidence consisted of declarations made by the uncle to third persons in the absence of the appellee, that he intended to leave all of his property to all of his relatives share alike. The precise question here involved as to the competency of such testimony was considered by us in the case of Benge's Admr. v. Fouts, 174 Ky. 654, 192 S. W. 703, and it was there resolved against the present contention of appellant.

No error prejudicial to appellant's substantial rights appearing, the judgment is affirmed.