## Sneed's Executor v. Smith.

(Decided June 19, 1934.)

LAWRENCE S. GRAUMAN for appellant.

J. S. LUSCHER for appellee.

134

Sophia Fox Smith, a cousin of Dr. Charles Sneed, and daughter of Annie Fox, brought this action in the Jefferson circuit court against the Louisville Trust Company, executor of the estate of Lavinia B. Sneed, claiming "she was office assistant" of Dr. Sneed, and "a housekeeper for him and his wife from the first of January, 1923, until his death, and that on divers occassions shortly before his death," Dr. Sneed promised her "if she would remain with Lavinia B. Sneed during her life as assistant, caretaker and housekeeper, she would be liberally compensated out of his estate for the services which she had previously rendered them and for those services which she would render after his death to said Lavinia B. Sneed"; that "she remained with Lavinia B. Sneed during all of said time, except from on or about September 6th, 1927, to on or about September 6th, 1930," and for which she had not been compensated by either Dr. Sneed or Lavinia B. Sneed, except board and lodging; and that her services were of the value of $4,120.50, and she was only made a legatee under the will of Lavinia B. Sneed, and devised $200.

By an amended petition she charged that "on divers occasions, Lavinia B. Sneed, to induce her, and did induce her," by promising that if she rendered the services mentioned in the orginal petition, "according to the promise exacted from plaintiff by Dr. Charles Sneed, the said Lavinia B. Sneed would compensate plaintiff by making her sole beneficiary of the estate of Lavinia B. Sneed and she relied upon said promises and she rendered the services as alleged in her petition."

The executor, by motion, requested the court to require her to elect whether she would rely on the promise of Dr. Charles Sneed or of Lavinia B. Sneed for her cause of action. The court declined to require her to elect.

In paragraph one of the second amended petition, she reiterated the allegations of her original petition and further alleged the services rendered Dr. Sneed and Lavinia B. Sneed up to the death of the former, was of the value of $1,605. By the second paragraph she set forth a contract she claimed she had made with Lavinia B. Sneed, wherein the latter "promised to make plain-

tiff for the services she had rendered decedent and her husband," as described in her original petition, and also "for the services she would render and the companionship she would afford" Lavinia B. Sneed "from July 19th, 1926 to June 23rd, 1932."

She fixed the value of these services to Lavinia B. Sneed at $4,120.50. The executor requested the court to require her to elect whether she would prosecute the action to recover the $1,605 or the $4,120.50. The court overruled its motion. The executor traversed the petition as amended and pleaded she was received, treated, and lived in the home of the Sneeds as a member of their family; sent to school, educated, carefully cared for, provided with food, clothing, medical care and attention, and that she received the same from them loco parentis and that no contract was ever entered into between the Sneeds and her and the services charged were rendered without hope or expectation of compensation on her part and without any intention on the part of the Sneeds to pay therefor. The answer was traversed by a reply. On the completion of the evidence, on a trial before a jury, she was permitted by the court to file a third amended petition, wherein she charged the contract mentioned in her petition was entered into by her mother and Lavinia B. Sneed, while she was an infant, for her use and benefit and that in accordance therewith she left her home in Madison county and moved to Louisville and resided, and continued to reside, from 1923, with the Sneeds and performed the services for them of "a companion, assistant, helper and caretaker of the Sneeds until their death," upon the promise of Lavinia B. Sneed that she would make the plaintiff the sole beneficiary of her estate, which she did not do, although the plaintiff had rendered all the services in accordance with the contract.

The executor objected to the filing of this amended petition; his objection was overruled, and by agreement of the parties, it was controverted of record.

On a submission of the issues to the jury, it returned a verdict in her favor of $4,120.50.

It will be observed that until the third amended petition was filed, the express contract which was the basis of her action as set forth in the orginal and two

amendments, was alleged to have been made by the Sneeds and the plaintiff. On this issue the court, over the objection of the executor, admitted evidence of conversations of Dr. Sneed with divers persons for the purpose of establishing a contract between him and Sophia Fox Smith. As this evidence was admitted, the executor saved proper exceptions. The third amended petition in fact was an abandonment of the contracts set forth in the original and first two amendments. The evidence showing the claimed promises of Dr. Sneed on the issue made on the third amendment was incompetent, and extremely prejudicial to the defenses of the executor.

The executor earnestly and persistently argues he was entitled to a peremptory instruction and the evidence is insufficient to support the verdict of the jury.

True it is much of the evidence of Sophia Fox Smith is of that character which we held in the case of Lucius' Adm'r v. Owens, 198 Ky. 114, 248 S. W. 495, was insufficient of itself to establish an express contract, such as is here asserted. The testimony of the majority of the witnesses is to the general effect that they heard Lavinia B. Sneed say that she intended Sophia Fox Smith should have all of her estate which she intended to devise to her for the care and attention and services rendered her by Sophia.

Annie Fox, Brent Fox, Hugh Turner, Annie Lee Fox, and others narrated conversations engaged in by Lavinia B. Sneed, wherein she declared her intention to devise to Sophia Fox Smith her entire estate to compensate the former for remaining at her home and rendering her services. All of the witnesses testify that when Lavinia B. Sneed made the statements detailed by them, Sophia Fox Smith was not present, except Annie Lee Fox, and she states unequivocally that Lavinia B. Sneed stated to her in Sophia Fox Smith's presence that "Sophia shall have what I have at my death, if she stays with me and takes care of me." On the whole, the testimony brings this case within DeFever's Ex'r v. Brooks, 203 Ky. 606, 262 S. W. 976, and Bean's Adm'r v. Bean, 216 Ky. 95, 287 S. W. 239; Ecton's Ex'rs v. Vinegar, 225 Ky. 15, 7 S. W. (2d) 487; Jones v. Jones, 210 Ky. 38, 275 S. W. 7.

Notwithstanding the testimony of the witnesses in

behalf of Sophia Fox Smith, the evidence abundantly establishes that the relations of Sophia Fox Smith and the Sneeds were equivalent to those of daughter and parents and that there was no intention on the part of Sophia Fox Smith to charge for the services rendered them, nor of an intention on their part to pay therefor. At least the evidence in this respect was sufficient to entitle the executor to an instruction presenting this defense. Taber v. McGregor, 192 Ky. 600, 234 S. W. 194.

The executor, still relying upon his objection to the filing of the third amended answer, insists it was substantially an abandonment of the cause of action stated in the original and the prior amendments, and in fact a new cause of action. Indeed this insistence is sustained by a comparison of the causes of action stated in the original, the first and second amendments with that set forth in the third amendment. But since this cause must be reversed on other grounds, it is entirely unnecessary to determine the executor's right to a reversal on its objection to the filing of the third amendment.

The court gave to the jury instructions Nos. 1 and 2. Instruction No. 1 directed the jury to find for Sophia Fox Smith "such sum as you believe from the evidence represents the fair and reasonable value of said services so contracted for and performed by" her, "not to exceed the sum of $4,120.50 with interest thereon at 6% per annum from June 23rd, 1932." The measure of recovery in an action on a parol contract to devise property in consideration of services, depends upon the character of services, and, where the benefit to the intestate can be measured by ascertaining the reasonable value, such will be the measure of recovery; but, where benefits cannot be measured by ordinary pecuniary standards, then the measure of the recovery is the value of the property promised. Broughton v. Broughton, 203 Ky. 692, 262 S. W. 1089. If the benefit to the decreased can be measured by ascertaining a reasonable value of the services rendered, in this event, proof of the value of the property is incompetent. Benge's Adm'r v. Creech, 175 Ky. 6, 192 S. W. 817; Walker v. Ganote (Ky.) 116 S. W. 689; Benge's Adm'r v. Fouts, 163 Ky. 796, 174 S. W. 510. In such action it

must appear that the services were rendered under an agreement to devise and not merely that the decedent intended to make a will recognizing such services. The right to recover compensation for services rendered to a relation must be determined in each case on its own facts; and where no amount is fixed, the recovery is on a quantum meruit measured by the value of the services. Sullivan's Adm'r v. Sullivan, 248 Ky. 744, 59 S. W. (2d) 999. Unless a contract to pay for the services rendered by a near relative to another of the degree of cousins is clearly shown, the presumption is that the services rendered were gratuitous, must prevail.

The evidence of Sophia Fox Smith shows that she performed the servces incident to ordinary housekeeping as well as those of a trained nurse. The instructions of the court permitted the jury to find for her the value of her services, without regard to whether the services were those performed incident to keeping house, or of a trained nurse, for a long period of time, when the evidence discloses that only at a certain time during that period, the services were rendered or required. It was shown that Sophia Fox Smith was in school for training nurses during a period of about three years, and practically during the entire time she was at the home of Lavinia B. Sneed, except this three years, she was attending night schools, when she performed the household and other services. And at the same time Lavinia B. Sneed was engaged in teaching school, and only for a short period of time were the services of a trained nurse rendered her. A form of an instruction in such case was approved in McAllister's Adm'r v. Bronaugh (Ky.) 113 S. W. 321, and Ecton's Ex'rs v. Vinegar, supra. Instruction No. 1 omits to inform the jury that the proof as to the statements of Lavinia B. Sneed, as detailed by the witnesses, with reference to her intention to devise her estate to Sophia Fox Smith to compensate her for her services, were not to be considered by it in fixing the value of her services, but only in determining whether the services were rendered upon the understanding and expectation by Lavinia B. Sneed and Sophia Fox Smith that they were to be paid for. A similar instruction was approved in McGrew's Ex'r v. O'Donnell, 92 S. W. 301, 28 Ky. Law Rep. 1366. On the evidence in the executor's behalf, it was entitled to have the jury instructed

if it believed from the evidence that Sophia Fox Smith lived with Dr. Charles Sneed and Lavinia B. Sneed as a member of their family and that her services, or any portion thereof, for which she sues, were rendered as a member of the family, and in contributing towards her part of the work in the family and that Dr. Charles Sneed and Lavinia B. Sneed, or either of them, received, or intentionally became the beneficiary of her services, will not authorize a recovery by her, and before the jury will be authorized to find for her, they must believe from the evidence that her services were rendered at the instance and request of Lavinia B. Sneed and with the agreement on her part that Sophia Fox Smith should be paid therefor. Galloway's Adm'r v. Galloway; 70 S. W. 48, 24 Ky. Law Rep. 857; Frailey's Adm'r v. Thompson, 49 S. W. 13, 20 Ky. Law Rep. 1179; Humble v. Humble, 152 Ky. 160, 153 S. W. 249; Addington v. Chatham, 228 Ky. 430, 15 S. W. (2d) 254.

It is a matter of general knowledge in cases of this character when the evidence shows the decedent indulged in using expressions merely indicating his or her appreciation of, and gratitude for, the care and attention and kindness rendered by a relative who is at the time a member of the decedent's family, the same are seized hold of, and accepted by the jury as evidence of an intention of the decedent to pay the relative therefor, and when such expressions of the decedent are coupled with the statement the services will be paid for by a devise to the relative, the jury are prone to return a verdict for the claimant. For these reasons in every such case, the instructions of the court should be so drawn as not to allow the jury to find for the claimant, either in whole or in part, for services merely rendered as a member of the family of the decedent, where the pleadings and evidence warrant its giving.

The true measure of recovery of Sophia Fox Smith is such sum as the jury may find from the evidence the services were worth, measured by the reasonable, customary, fair price of similar or like services. Green's Adm'r v. Teutschmann, 97 S. W. 7, 29 Ky. Law Rep. 1149; Ecton's Ex'rs v. Vinegar, supra. The instructions of the court should confine the amount of the recovery to the fair, reasonable, and customary value of the services rendered, and not the amount required in

the estimation of the jury to compensate her for the labor, drudgery, and other unpleasant experiences in doing so. DeFever's Ex'r v. Brooks, 203 Ky. 606, 262 S. W. 976. The executor having objected thereto, after the third amended petition was filed, the court sua sponte should have excluded all testimony concerning the statements of Dr. Sneed—whether promissory or otherwise. On another trial, if one is had, the court will not admit any testimony relative to any statement of Dr. Sneed.

Wherefore, the judgment is reversed for proceedings consistent with this opinion.